[Civ. No. 53247. First Dist., Div. Three. Jan 7, 1982.]

CLARENCE A. LESKO, Petitioner, v.
THE SUPERIOR COURT OF MARIN COUNTY, Respondent;
JOSE LOPEZ, a Minor, etc., et al., Real Parties in Interest.

478

Counsel

D. Stuart Candland and Craddick, Candland & Conti for Petitioner.

No appearance for Respondent.

Richard H. Jordan for Real Parties in Interest.

Opinion

**FEINBERG, J.**—This petition challenges a trial court refusal to dismiss an action for failure to serve and return service of summons within three years of filing the action (Code Civ. Proc., § 581a).[1] We issued an alternative writ.

### The Facts

The lawsuit underlying this petition is for alleged medical malpractice in the delivery of Jose Lopez on January 14, 1970. Under the provisions of section 340.5,[2] Jose Lopez was entitled to bring suit any

---

[1]Hereafter, all section references are to the Code of Civil Procedure.

[2]Applicable portion of section 340.5: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commence-

time before his eighth birthday. Pursuant to the notice requirements contained in section 364,[3] plaintiff was first required to inform defendant of the legal basis of the claim and the type of loss sustained. This Jose Lopez did by letter addressed to defendant, dated January 13, 1978, the day before his eighth birthday.

The same day, Jose Lopez, by his guardian Fae J. Lopez, filed a complaint for damages for medical malpractice, naming only Doe defendants. Apparently, the naming of only Doe defendants was intended to avoid violation of the 90-day notice requirement (see § 364, subd. (a)). This complaint was never served.

The 90-day notice sent to petitioner was turned over to petitioner's counsel. By letter of January 27, 1978, petitioner's counsel wrote to real parties' counsel, indicating that he would be willing to discuss the case *prior* to suit being filed. Obviously, petitioner's counsel was unaware that real parties had filed a Doe complaint.

On April 7, 1978, real parties' counsel answered the letter of January 27, 1978, by indicating that if petitioner had "a proposal for initiating settlement negotiations in the near future to obviate the expense and

---

ment of legal action exceed three years unless tolled for any of the following" (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person.

"Actions by a minor shall be commenced within three years from the date of the alleged wrongful act except that actions by a minor under the full age of six years shall be commenced within three years or prior to his eighth birthday whichever provides a longer period. Such time limitation shall be tolled for minors for any period during which parent or guardian and defendant's insurer or health care provider have committed fraud or collusion in the failure to bring an action on behalf of the injured minor for professional negligence."

[3]Applicable portion of section 364: "(a) No action based upon the health care provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action.

"(b) No particular form of notice is required, but it shall notify the defendant of the legal basis of the claim and the type of loss sustained, including with specificity the nature of the injuries suffered.

"(c) The notice may be served in the manner prescribed in Chapter 5 (commencing with Section 1010) of Title 14 of Part 2.

"(d) If the notice is served within 90 days of the expiration of the applicable statute of limitations, the time for the commencement of the action shall be extended 90 days from the service of the notice.

"(e) The provisions of this section shall not be applicable with respect to any defendant whose name is unknown to the plaintiff at the time of filing the complaint and who is identified therein by a fictitious name, as provided in Section 474."

time that would be incurred in discovery and trial preparation [he] would be pleased to discuss it with [him]. Therefore, any Complaints which may be placed on file in order to protect against the running of the statute of limitation, will not be served ... until [counsel] have had an opportunity to explore the possibility of such negotiations."[4] On April 11, 1978, real parties filed a first amended complaint in the same action, naming petitioner as defendant but made no attempt to effect service.

Thereafter, for approximately three years, there was an exchange of letters between respective counsel. On September 19, 1979, counsel for real parties, in writing, offered to settle the case against petitioner for $250,000 and stated that the offer would be "held open through and including October 15, 1979." On October 10, 1979, counsel for petitioner answered by saying that real parties' offer would be given serious consideration, but before a decision could be made, petitioner wished to have a medical examination of real party in interest Jose Lopez. Counsel for real parties agreed. For various reasons, that examination was not completed until March 18, 1980. On November 24, 1980, counsel for real parties wrote to petitioner's counsel, stating that he desired a response to the longstanding offer of settlement ($250,000) and that a response should be available by January 15, 1981. On January 22, 1981, by letter, counsel for petitioner rejected the offer but indicated that he was still willing to negotiate at some lesser amount.

It appears that real parties terminated settlement negotiations at that point and then proceeded to serve petitioner on April 8, 1981 with the first amended complaint.[5]

Petitioner then filed a notice of motion to quash service of summons and complaint. In his moving papers he sought alternatively to dismiss the lawsuit for failure to return service within three years of filing the complaint (§ 581a) or the sustaining of a demurrer for violation of the statute of limitations of eight years (§ 340.5). The court, in its order denying the motion to dismiss and overruling the demurrer, stated that: "The complaint for damages as to Dr. Clarence A. Lesko is deemed to

---

[4]In the same letter, real parties stated that if the case went to trial, they would assume that "the amount of the recovery ... could well exceed $1,000,000."

[5]Real parties waited over two months after negotiations broke down to make service. We surmise that he was under the impression that the three years, under section 581a, began to run from the filing of the amended complaint on April 11, 1978.

have been filed on January 13, 1978, and copies of the summons and complaint were served on Dr. Lesko on April 8, 1981. The Court further finds that defendant, by his conduct, did not in any way mislead plaintiff as to the need to serve summons and complaint within three years after the complaint was filed. The Court further finds that it was not impossible, impracticable or futile to attempt to serve Dr. Lesko within three years after the complaint was filed since from the outset plaintiff knew his identity and he was amenable to process. Finally, the Court finds that plaintiff acted reasonably and with due diligence in prosecuting this action and in serving Dr. Lesko with summons and complaint on April 8, 1981."

### Discussion

I. *Has Hocharian v. Superior Court (1981) 28 Cal.3d 714 [170 Cal.Rptr. 790, 621 P.2d 829] Added a New Implied Exception to Code of Civil Procedure Section 581a, Whereby a Diligent Plaintiff May Avoid Dismissal Without Showing Impracticability, Impossibility or Futility or the Facts Constituting an Estoppel?*

1. Preliminarily, we must determine whether the three-year period prescribed in section 581a runs from the filing of the John Doe complaint on January 13, 1978, as the trial court held or from the filing of the amended complaint on April 11, 1978, as real parties contend. For, if the latter, service was effected within three years.

Real parties assert that the amended complaint was, for all practical purposes, the first pleading filed, because it is the first pleading which, under section 364, would have allowed petitioner to be named as a defendant. Therefore, "the normal rules on naming fictitious defendants, relation back of amendments to original pleadings, and commencement of a cause of action, should not apply," real parties argue.

In effect, real parties contend the January 13, 1978, complaint was a nullity because of the provisions of section 364, subdivision (a).

Further, real parties point out they could have filed a new complaint on April 11, 1978, as if to argue that because they *could* have done so, they should be deemed to have done so.

The trial court correctly rejected these arguments when made below. Regardless of what real parties *could have done*, what they did was file

a formal complaint on January 13, 1978, and amend that same complaint on April 11, 1978. The amendment alleged the same operative facts and substituted the name of petitioner for a previously named Doe defendant. Contrary to real parties' assertion that petitioner's name could not have been used in any earlier pleading, the 90-day notice requirement of section 364 is not jurisdictional. Failure to comply merely furnishes a ground for discipline by the State Bar of California in any case brought to its attention. (§ 365; *Toigo* v. *Hayashida* (1980) 103 Cal.App.3d 267 [162 Cal.Rptr. 874].)

2. We come now to the *Hocharian* decision.

Section 581a, subdivision (a) provides: "(a) No action heretofore or hereafter commenced by complaint shall be further prosecuted, and no further proceedings shall be had therein, and all actions heretofore or hereafter commenced shall be dismissed by the court in which the same shall have been commenced, on its own motion, or on the motion of any party interested therein, whether named as a party or not, unless the summons on the complaint is served and return made within three years after the commencement of said action, except where the parties have filed a stipulation in writing that the time may be extended or the party against whom the action is prosecuted has made a general appearance in the action." Despite the apparently mandatory language of section 581a, subdivision (a), prior to *Hocharian*, a number of implied exceptions developed to the requirement of mandatory dismissal. Thus where service of summons was impossible, impractical or would have been futile, mandatory dismissal is not required. And where the defendant by his conduct lulled the plaintiff into not effecting service, the defendant may be estopped to assert the dismissal requirement of section 581a.

Then came *Hocharian*. In *Hocharian*, the plaintiff was injured while driving a car leased by her employer, Georgia-Pacific Corporation. Allegedly, the accident was caused by faulty brakes. On August 30, 1976, plaintiff sued General Motors, one Beasley, the operator of an Arco Station where the car was usually serviced, another named defendant and a number of Doe defendants. In September 1979, more than three years after the filing of the complaint, General Motors deposed an employee of Georgia-Pacific who usually drove the car in question. He testified that while Beasley usually serviced the car, there had been one occasion when the brakes had been inspected by Hocharian, the operator of a Texaco Service Station. In October 1979, Hocharian was deposed. Thereafter, in November 1979, Hocharian was served with

summons as a Doe defendant. Service was thus made some nine weeks *after* the three-year period specified in section 581a had elapsed.

In the course of the *Hocharian* opinion, the court stated, "[T]he courts have suggested at least three 'implied exceptions' to section 581a's rule of mandatory dismissal—impossibility, impracticability, and futility—to be applied in the trial court's discretion. [Citations.] ... [I]t now appears necessary to articulate some general guidelines for the exercise of this discretion which are consistent with the underlying statutory intent.

"In applying any of these exceptions to a given factual situation, the critical question is whether a plaintiff used reasonable diligence in prosecuting his or her case. The particular factual context or cause of the noncompliance should not be determinative, rather, the primary concern must be the nature of the plaintiff's conduct." (*Hocharian* v. *Superior Court, supra*, 28 Cal.3d at pp. 721-722, fns. omitted.)[6]

Real parties thus argue, and the trial court impliedly held, that the attempt to settle the case during the three-year period following the filing of the complaint, without effecting service, was the exercise of "reasonable diligence in prosecuting his ... case." It is not casuistry to say that a plaintiff who seeks a favorable settlement of his case is "prosecuting" his case.

Surely, we should seek to encourage settlement rather than trial. And, in a concrete way, some progress was made towards a resolution by trial if trial became inevitable. For example, during the course of the negotiations, the minor plaintiff was made available for medical examination and was so examined by a physician of defendant's choice as to the nature, extent and etiology of the disabilities complained of.

Nevertheless, we are of the view that real party has misperceived the thrust of *Hocharian*. We have come to this conclusion reluctantly, for this is a hard case. But hard cases should not make bad law.

As we read *Hocharian*, we believe that it holds simply that the mandatory dismissal of section 581a may not apply where, despite

---

[6]In footnote 4 (*id.*, at p. 721), the court recognized estoppel as an additional "implied exception" to the mandatory dismissal of section 581a.

*reasonable diligence* on the part of plaintiff, service could not be effected upon the defendant within the statutory three-year period.[7]

Put differently, the "implied exceptions" to section 581a have now been modified so that, for example, it is not necessary to show that service of summons was an "impossibility." It is enough to show that plaintiff was "reasonably diligent," though unsuccessful, in attempting to serve defendant in the three-year interval.

Why, then, did the court speak in terms of "reasonable diligence in *prosecuting* his or her case," rather than in terms of reasonable diligence in attempting to effect service?

The answer lies in the peculiar factual context of *Hocharian.* In the usual case where service is not effected within the three years, the identity of the defendant is known to plaintiff; it is his whereabouts that are not known. In that context, one can speak of attempts to find the defendant and serve him. But, in *Hocharian*, the converse was true. Plaintiff did not know of the existence of Hocharian as a possible defendant. Obviously, therefore, it would have been meaningless to speak of an attempt to serve him. Instead, the issue became whether the plaintiff had used reasonable diligence in prosecuting the case against the named defendants during the three years following the filing of the complaint. For, if the plaintiff had, the failure to ascertain the existence of Hocharian as a potential defendant and the consequent lack of service would not bring the mandatory dismissal of section 581a immediately into play. On the other hand, if the failure to discover Hocharian's role as a possible tortfeasor within the three-year period so as to be able to serve him during that time, was due to a lack of diligence on plaintiff's part in prosecuting the action, i.e., not using discovery procedures to seek out potential defendants (see *id.,* p. 723, fn. 8) then, the mandatory dismissal of section 581a would operate.

In short, in our view, the concept of "reasonable diligence" relates to an inability to effect service within the statutory time. Thus, when a

---

[7]We are aware that *Hocharian* imposes a twofold test. First, did the plaintiff exercise "reasonable diligence?" Second, if he did, the trial court in exercising its discretion as to whether to dismiss, must balance "the harm to the plaintiff if the motion is granted against the prejudice to the defendant if he is forced to defend the suit." (*Id.,* at p. 724, fn. omitted.) Because, in our view, the plaintiff did not act with "reasonable diligence," we have no occasion to discuss the "balancing."

known defendant is not served despite reasonably diligent efforts to serve the defendant or an unknown possible defendant is not ascertained in time to serve within the three years, despite reasonably diligent efforts by the plaintiff to prosecute the action against the named defendants, in either case, the first prong of the *Hocharian* test for avoiding mandatory dismissal under section 581a has been met.

We are fortified in our opinion by a statement by the *Hocharian* court "that a trial court must dismiss if the plaintiff fails to prove reasonable diligence in attempting to serve and return summons." (*Id.*, at p. 721, fn. 3; see also *House* v. *State of California* (1981) 119 Cal. App.3d 861, 874 [174 Cal.Rptr. 279].)

If we are correct, then it follows that real party in the case at bench cannot avail himself of the rule of *Hocharian.* Petitioner was known to real party as the defendant at all times. It is not disputed that petitioner was, at all times, available for the service of summons. Real parties apparently, in order to facilitate settlement discussions and "to obviate the expense and time that would be incurred in discovery and trial preparation," decided on his own not to effect service of summons. While this may have been a commendable reason for not making service, it is not one that comes within the "implied exceptions" to section 581a as elaborated in *Hocharian.*

II. *Is Petitioner Estopped From Seeking Dismissal Under Section 581a?*

■ The answer is no. Real parties, relying on *Tresway Aero, Inc.* v. *Superior Court* (1971) 5 Cal.3d 431 [96 Cal.Rptr. 571, 487 P.2d 1211], argue that petitioner, by engaging in settlement negotiations, impliedly agreed that service of process could be withheld. Therefore, say real parties, petitioner should be estopped from seeking dismissal under section 581a. Real parties' reliance on *Tresway* is misplaced.

In *Tresway*, defective service of summons was made upon the defendant. Plaintiff appears not to have been aware that the service was defective. If the service had been valid, defendant would have been required to plead, by way of answer or demurrer, *before* the three-year period specified in section 581a would have expired. Such a pleading would have constituted a general appearance, thus avoiding the mandatory dismissal provision of section 581a. Or, if instead of pleading at or

before the time required, defendant had moved to quash service of summons, it would have apprised plaintiff of the defective service in time to effect valid service. Instead, defendant asked plaintiff for and obtained a 20-day extension of time in which to make an appearance. The extension of time carried the complaint beyond the three-year period for effecting service. As the court said, "By requesting that extension, defendant led plaintiff to believe that further service of process on defendant would be duplicatory and redundant." (*Id.*, at p. 441, fn. omitted.) Therefore "since the responsibility for plaintiff's failure to effect valid service within the period of section 581a rests upon defendant, 'the ends of substantial justice' [citation] will be best served by estopping defendant from moving to dismiss under that section." (*Id.*, at p. 442.)

We compare, now, the case at bench with *Tresway*.

In *Tresway*, the plaintiff thought he had effected valid service, timely, upon the defendant. In the case at bench, real parties knew that he had not served petitioner.

In *Tresway*, the defendant, by asking for a continuance, effected two results. First, he led plaintiff to believe that there was no issue as to defective service. Second, he prevented plaintiff from finding out that the service was defective in time to effect valid service. In the case at bench, petitioner did not ask for anything; he simply entered into settlement negotiations with real parties. Petitioner said nothing in response to real parties' statement that service would not be made. Petitioner never represented that he would settle, he represented only that he was willing to discuss settlement. Was petitioner under some duty to apprise real parties that petitioner was not waiving his rights under section 581a? We perceive none.

Real parties seek to bring themselves within *Tresway* by arguing that if petitioner had rejected the offer of settlement before January 13, 1981 (three years following the filing of the Doe complaint), real parties would have been aware of the necessity of effecting service and could have done so in time. Real parties concede, however, that they gave petitioner until January 15, 1981, to respond, by which time it was too late to make timely service. Thus, it was not any act of petitioner's that prevented timely service. And, as we pointed out (see footnote 5), even after negotiations were terminated, real parties waited more than 60 days before serving petitioner.

Assuming for the moment that by entering into settlement negotiations petitioner's conduct could be construed as manifesting some tacit acquiescence in the real parties' decision not to effect service while negotiations were pending, were real parties reasonably entitled to rely on petitioner's conduct? *Tresway* tells us that plaintiff's reliance must be "reasonable" before estoppel will apply. (*Id.*, at p. 440; accord *Hocharian* v. *Superior Court, supra,* 28 Cal.3d at p. 721, fn. 4.) Here, from real parties' perspective, petitioner's conduct with regard to the question of service of summons was ambiguous, at best. Section 581a provides its own escape hatch from its mandatory dismissal requirement by making an exception therefrom where the parties have filed a stipulation in writing that the time for effecting service may be extended. Surely, the reasonable thing for real parties to have done as the negotiations dragged on for three years would have been to send a stipulation to petitioner extending time to make service. If petitioner signed the stipulation, there could be no problem regarding dismissal under section 581a. If, on the other hand, petitioner would not sign such a stipulation, then real parties would have been alerted to the necessity of effecting service.

We conclude that the trial court was correct in finding no estoppel.

Let a peremptory writ of mandate issue directing the court to set aside its order denying petitioner's motion to dismiss, and in its place and stead, issue its order granting said motion and dismissing real parties' action pursuant to section 581a.

Barry-Deal, J., concurred.

**WHITE, P. J.**—I respectfully dissent. The central question raised by this petition is what effect, if any, the decision in *Hocharian* v. *Superior Court* (1981) 28 Cal.3d 714 [170 Cal.Rptr. 790, 621 P.2d 829], has had upon the previously established implied exceptions to Code of Civil Procedure section 581a. Although several Court of Appeal opinions have cited or discussed *Hocharian*, until now none has attempted to determine its effect upon the pre-*Hocharian* list of exceptions to section 581a.[1] The majority herein essentially conclude that *Hocharian* did not add a new "implied exception" to the three previously suggested, i.e., impossibility, impracticability, and futility.

---

[1]In *Searle* v. *Superior Court* (1981) 117 Cal.App.3d 539, 544-545 [172 Cal.Rptr. 841], the court read *Hocharian* as requiring a hearing and findings of fact regarding

"As we read *Hocharian*, we believe that it holds simply that the mandatory dismissal of section 581a may not apply, where despite *reasonable diligence* on the part of plaintiff, service could not be effected upon the defendant within the statutory three-year period." (Maj. opn., p. 483.) The majority view is that *Hocharian* wrought only a modification. "Put differently, the 'implied exceptions' to section 581a have now been modified so that, for example, it is not necessary to show that service of summons was an 'impossibility.' It is enough to show that plaintiff was 'reasonably diligent,' though unsuccessful, in attempting to serve defendant in the three-year interval." (Maj. opn., p. 484.)The majority has succinctly delimited *Hocharian*'s reasonable diligence standard: "the concept of 'reasonable diligence' relates to an inability to effect service within the statutory time." (Maj. opn., p. 484.) The majority then conclude that because the real party in interest clearly at all times had the ability to serve petitioner and unilaterally decided to forego service, section 581a even as elaborated in *Hocharian* mandates dismissal.

The majority's view is reasonable, but I offer the thought that it is unduly restrictive or narrow. Particularly is this the case in light of the *Hocharian* court's emphasis upon the primary purpose of section 581a. That purpose "is to assure reasonable diligence in the prosecution of lawsuits... to insure that defendants ... have a reasonable opportunity to locate evidence and witnesses in preparing a defense." (*Hocharian, supra*, 28 Cal.3d at p. 724.)

Consequently, I argue that *Hocharian* paints with a broader brush than that perceived by the majority. *Hocharian*, pages 719 through 721,

the plaintiff's diligence as well as a balancing of the harm to plaintiff against prejudice to defendant. It did not consider whether *Hocharian* had added a new exception to Code of Civil Procedure section 581a.

In *Tandy Corp.* v. *Superior Court* (1981) 117 Cal.App.3d 911 [173 Cal.Rptr. 81], the court merely returned the matter to the trial court where the court could reconsider to determine whether an excuse existed under *Hocharian*. It did not attempt to interpret *Hocharian*.

In *House* v. *State of California* (1981) 119 Cal.App.3d 861, 874 [174 Cal.Rptr. 279], the court concluded that the estoppel exception was viable after *Hocharian* but that substantial evidence supported the trial court's conclusion that estoppel did not apply.

*Borglund* v. *Bombardier, Ltd. Internat. Assn.* (1981) 121 Cal.App.3d 276 [175 Cal.Rptr. 150], and *Holder* v. *Sheet Metal Workers' Internat. Assn.* (1981) 121 Cal. App.3d 321 [175 Cal.Rptr. 313], held, respectively, that the estoppel exception applied both to the five-year limit of Code of Civil Procedure section 583, subdivision (b) and the three-year limit for retrial after reversal on appeal (Code Civ. Proc., § 583, subd. (c)).

explains that in order to avoid an unfair result appellate courts perform a counter-balancing act rather than subjecting statutes such as section 581a to inflexible interpretation. Thus, statutes that are "apparently mandatory" are found to be subject to "implied exceptions." As regards section 581a, the policy of the law as declared by the courts contemplates that when a plaintiff prosecutes that action with *reasonable diligence*, the action should be tried on the merits; when *reasonable diligence* is found to be lacking, dismissal of plaintiff's action is signaled. Initially, of course, the trial court functions to implement this policy by the exercise of its sound discretion. Prior to *Hocharian*, the appellate decisions had "suggested" to the trial courts hearing section 581a motions, three (four when "estoppel" is counted) "implied exceptions" without formulating any "fixed rules" for their application. Until *Hocharian*, these "exceptions" were generally viewed as being "carefully limited to two restricted categories, excusing plaintiff's delay where (1) defendant is *estopped* to complain (*Tresway Aero., Inc.* v. *Superior Court* (1971) 5 Cal.3d 431, 441-442 ...), or (2) there are circumstances *beyond plaintiff's control* which made it 'impracticable, impossible, or futile' to comply with section 581a (*Ippolito* v. *Municipal Court* (1977) 67 Cal.App.3d 682, 687 ...); *Highlands Inn, Inc.* v. *Gurries* (1969) 276 Cal.App.2d 694, 698 ...)." (*Hocharian*, at p. 726, Richardson, J., dissenting.)

As focused upon by Justice Richardson, no prior case had excused compliance with either section 581a or section 583 "based upon circumstances which are *within* plaintiff's control, such as the failure to discover relevant facts or evidence." (*Id.*, at p. 727.) He noted that the plaintiff in *Hocharian* conceded that there was no basis for a finding that the defendant should be estopped from relying upon section 581a and he asserted that "plaintiff must acknowledge that timely service upon defendant Hocharian was wholly *within her control*, for defendant was amenable to process throughout the entire period in question." (*Id.*, at p. 726.) (Such is the case, of course, herein.) Justice Richardson predicted that the majority ruling would lead to the unsettling consequence of leaving "innumerable civil actions entirely open-ended subject to the vagaries of a case-by-case inquiry as to the 'reasonableness' of plaintiff's conduct and the 'prejudice' to defendant." (*Id.*, at p. 728.)

Along similar lines, Justice Clark, in a separate dissent, opined that the decision went well beyond prior law and removed "all substantive effect from section 581a," causing it to equate with the two-year statute

for bringing a case to trial (Code Civ. Proc., § 583, subd. (a)). (*Id.*, at pp. 728-729.)

It is my humble opinion that a reasonable interpretation of the *Hocharian* decision can be drawn from a reading of the majority decision as criticized by the dissent. Petitioner posits two possible interpretations of *Hocharian*: (1) Petitioner's view that *Hocharian* has added no new exception for "reasonable diligence" by the plaintiff but has merely said that in applying the old exceptions the court must make sure the plaintiff has been reasonably diligent (this view although stated differently seemingly approximates the majority view herein); and (2) the trial court's view that even if none of the traditional exceptions exists a plaintiff may, by proving reasonable diligence, obtain relief from the otherwise mandatory terms of the statute. (On its face, the following quote from *Hocharian* appearing in footnote 6, page 722, seems to support this view: "While the specific considerations may be different, the underlying question is the same: whether or not unreasonable conduct on the part of plaintiff gave rise to the noncompliance. Moreover, trial courts, familiar with the balancing process central to negligence determinations, are well equipped to resolve this question.")

In my view neither of these interpretations is wholly accurate. Rather, it would seem that the *Hocharian* court has at least nominally retained the traditional exceptions but has liberalized the circumstances in which they would apply and has created a procedural framework for determining applicability. Pivotal to explaining *Hocharian* are the court's statements (at p. 722) that "[i]n applying any of these exceptions to a given factual situation, the critical question is whether a plaintiff used reasonable diligence in prosecuting his or her case. *The particular factual context or cause of the noncompliance should not be determinative; rather, the primary concern must be the nature of the plaintiff's conduct.*" (Italics added.) Thus, courts will no longer wrestle abstractly with the question of whether the serving of the complaint would have been "impossible, impracticable, or futile" because of circumstances beyond the plaintiff's control. Instead they will determine impracticability or futility by examining whether the failure to return service within three years occurred despite reasonable diligence on the part of the plaintiff. If a reasonably diligent plaintiff was unable to accomplish service and return thereof within the three-year period, then it was "impossible, impracticable, or futile" to do so regardless of whether the circumstances were in a literal sense within the plaintiff's "control."

This trial court concluded that there were no grounds for an estoppel and that "it was not impossible, impracticable or futile" to serve petitioner within the three-year period because his identity was known and he was amenable to process from the outset. However, the court found that the plaintiff acted reasonably and with due diligence in prosecuting the action and in serving Dr. Lesko when he did. Thus, the motion to dismiss was denied.

My understanding of *Hocharian*, if correct, compels the observation that the court's order is internally inconsistent. If the plaintiff was reasonably diligent there must have been "impossibility, impracticability, or futility" preventing a timely return of service. What the trial court apparently was saying is that under pre-*Hocharian* interpretation of those terms, none of the exceptions existed. However, *Hocharian* has reinterpreted the exceptions and focused inquiry upon the plaintiff's diligence. Having found due diligence, the trial court's *conclusion* that there was impossibility, impracticability or futility was erroneous. This error was not harmful, however, since the important question was whether plaintiff had met the burden of showing due diligence in serving and returning service on the summons. If the evidence supports the trial court's finding concerning due diligence, its decision should be upheld.[2]

The evidence supports the trial court's finding of diligence. From the beginning real parties pursued settlement in preference to litigation, advising counsel for petitioner within three months of the filing of the original complaint that "any Complaints which may be placed on file in order to protect against the running of the statute of limitations, will not be served on your clients until you and I have had an opportunity to explore the possibility of such negotiations." Petitioner appeared receptive to the possibility of settlement, agreeing to give "serious consideration" to a demand to settle for $250,000. Ultimately, because of a medical examination favorable to petitioner, petitioner rejected the original demand, but suggested real parties' counsel confer with his clients and reconsider the amount required to resolve the dispute. During the course of the correspondence nothing was said about the need to

---

[2]Real parties also assert that the court's decision may be upheld on estoppel grounds. Thus, though the trial court found no grounds to estop petitioner from asserting the three-year statute, real parties argue that the trial court erred in that finding. They would have this court find an estoppel to support the trial court decision. In my view, the court need not consider the estoppel ground since the decision is supportable on due diligence.

serve petitioner within three years and a deadline for response to real parties' final letter was set without any hint from petitioner that he expected timely service of summons in spite of the continuation of settlement negotiations.

Whether the actions of plaintiff should be considered "reasonable diligence" is a difficult question because the cause of the delay is different from that involved in *Hocharian* and cases analyzed there. In *Hocharian*, the delay was caused by failure to discover the identity of the potential defendant, and in most of the prior cases the plaintiffs encountered difficulties in serving known defendants. (See *Hocharian, supra*, 28 Cal.3d, at p. 722, fn. 6.) Here there was a known defendant who could have been served within the period of the statute, but plaintiff chose to defer service and advised defendant of that choice. Thus, the question is not whether plaintiff acted diligently in attempting to serve defendant but whether the "reasonable diligence" standard is met by a plaintiff who deliberately chooses not to serve a known defendant who is amenable to service. In other words, must the "reasonable diligence" requirement relate directly to attempts to discover and serve a defendant, or may it be satisfied by a plaintiff who is reasonably diligent in seeking to avoid the need for service of summons but in the process deliberately or inadvertently violates the three-year statute?

The reasonable answer to this question lies in the purpose of the statute, which is to "'afford the party or parties against whom [the suit] is brought an opportunity to present such evidential support to any defense he or they may have thereto as may be available at the time the action is instituted, but which may be lost or destroyed through the death of witnesses or otherwise before the action is brought to issue by reasons of an unreasonably long delay in serving the defendant or defendants with appropriate legal process notifying him or them of the pendency of the action.'" (*Hocharian, supra*, 28 Cal.3d 714, 719-720, quoting from *People* v. *Kings County Dev. Co.* (1920) 48 Cal.App. 72, 76 [191 P. 1004].) Where, as here, the defendant has been notified of the lawsuit at or near the time of its filing but service has been delayed during legitimate settlement negotiations and the defendant has been informed of the intent to delay service and has acquiesced in that approach to service, it does not seem improper for a trial court to find "reasonable diligence" by the plaintiff and to relieve him from the strictures of section 581a. Strict application of the statute would in no way accomplish its purpose in such a situation.

Having found reasonable diligence, the trial court was further obliged, under *Hocharian*, to balance "the harm to the plaintiff if the motion [were] granted against the prejudice to the defendant if he [were] forced to defend the suit. As long as the court engages in this balancing process, its decision should not be disturbed on appeal absent an abuse of discretion. [Citation.]" (28 Cal.3d at pp. 724-725.) Although neither the partial transcript of the hearing on the motion nor the court's order denying same mentions any balancing of prejudice, petitioner does not claim that the court failed to engage in the balancing process. Absent evidence to the contrary, it should be presumed that the court acted properly. Moreover, it is not clear that petitioner did or could have presented evidence of how the delay in service of summons prejudiced him, in light of the fact that his first notification of the lawsuit did not take place at the time of service.

To summarize, it would appear that a reasonable reading of the *Hocharian* decision finds that it has not added a separate exception for plaintiff's reasonable diligence, but has recast the inquiry into "impossibility, impracticability, and futility," making those exceptions applicable whenever a reasonably diligent plaintiff has failed to accomplish service and return of service within three years. Although the question of reasonable diligence will normally turn upon what efforts the plaintiff has made to discover or serve a defendant, the concept may also be applied in a situation such as this where the defendant has been notified of the suit and of plaintiff's intention to delay service and has expressed no need for service within the statutory period. Though the trial court's compliance with the balancing of prejudice requirement of *Hocharian* has not been revealed by the record, it is not contested by petitioner and there is no reason to think the balancing process did not take place.

I would discharge the alternative writ and deny the peremptory writ.

The petition of real parties in interest for a hearing by the Supreme Court was denied March 10, 1982.