[No. H004491. Sixth Dist. Aug. 24, 1988.]

RUDOLFO SANCHEZ, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY,
Respondent;
ALFONSO MARTINEZ et al., Real Parties in Interest.

COUNSEL

Christopher C. Love, Laura S. Eckerlin and Lewis, D'Amato, Brisbois & Bisgaard for Petitioners.

No appearance for Respondent.

John C. Stein, James F. Boccardo and Edward J. Niland for Real Parties in Interest.

OPINION

BRAUER, J.—By petition for writ of mandate, Rudolfo Sanchez challenges the trial court's denial of his motion to dismiss for failure to serve and return service of summons within three years of filing the complaint.[1] We find that plaintiffs below did not comply with the mandatory requirements of the three-year statute and do not come within any exception to it. Consequently we will issue the writ directing the trial court to set aside its order denying Sanchez's motion to dismiss and instead issue an order granting the motion and dismissing action No. 563153 as to defendant Sanchez.[2]

## BACKGROUND

On April 3, 1984, an automobile accident occurred on Highway 101 causing the deaths of all six occupants of a jeep driven by Helen Urueta. Mrs. Urueta and her three minor children were killed, as well as two minor children of Alfonso and Nikki Martinez. Also involved in the accident were a truck owned and operated by petitioner Sanchez and a truck owned by Bi-Rite Auto Transport Inc. and driven by Lyle Moore (Bi-Rite and Moore will be referred to collectively as Moore).

Two complaints were filed as a result of this accident. The first was filed on April 12, 1984, by the Boccardo Law Firm on behalf of the survivors of the Urueta family (the *Urueta* action, or action No. 546668). That complaint alleged causes of action for negligence against Sanchez and Moore, and strict products liability against American Motors Corp. and AMC Jeep Inc. (collectively AMC), the manufacturers of the Urueta jeep. The complaint was served on all defendants and all filed responsive pleadings. The State of California was later served as a Doe.

The second complaint was filed on December 3, 1984, by the law firm of Belli & Sabih on behalf of Mr. and Mrs. Martinez (the *Martinez* action, or action No. 563153). That complaint alleged the same causes of action against the same defendants, but was never served on any defendant.

---

[1] Provisions regarding the mandatory time for service of summons are contained in sections 583.110 through 583.250 of the Code of Civil Procedure. Section 583.210, subdivision (a) provides as follows: "The summons and complaint shall be served upon a defendant within three years after the action is commenced against the defendant. For the purpose of this subdivision an action is commenced at the time the complaint is filed." We will be referring to these code sections collectively as "the three-year statute."

[2] Two other defendants in action No. 563153 have filed petitions in this court seeking similar relief. The issues as to them are less clear cut, however, and we have denied those writs. In so doing we leave open for appellate review the question of the propriety of the trial court's denial of the motions to dismiss as to those two parties.

On or about October 2, 1985, the Boccardo Law Firm substituted in as counsel for plaintiffs in the *Martinez* action in place of Belli & Sabih. Thereafter the Boccardo firm continued to represent both sets of plaintiffs throughout these proceedings.

On October 9, 1985, the *Urueta* plaintiffs noticed a motion to consolidate actions No. 546668 and 563153 pursuant to Code of Civil Procedure section 1048, subdivision (a)[3] on grounds that the two actions arose from the same incident involving the same parties. Consequently witnesses, evidence and discovery, as well as questions of law and fact, would be common to both cases. The notice was served on all defendants. The motion was unopposed, there was no appearance on behalf of any defendant, and the cases were ordered consolidated for trial.

During the next year plaintiffs took five depositions, including those of defendants Sanchez and Moore. All defendants appeared through counsel at all of these depositions. Transcripts of the depositions show that plaintiffs' attorneys introduced themselves to all present as appearing on behalf of both the Urueta and the Martinez families, while defendants' lawyers made no representations whatsoever regarding their appearance at deposition.

The three years within which defendants could have been served with the complaint in the *Martinez* action ran on December 4, 1987. Thereafter all three defendants filed motions to dismiss. Opposition and reply papers were filed and the motions were heard together on March 23, 1988, by Judge Leslie Nichols.

Judge Nichols denied the motions. In doing so he found that certain specific conduct by defendants AMC and Moore had constituted a general appearance in the *Martinez* action. Those findings do not concern us here. As to all three defendants, the court found that "defendants appeared in the Martinez action by their participation in discovery" and that "defendants are estopped to seek dismissal." The order denying the three motions concluded in this vein: "Dismissal in this case would be a great injustice. The Court is not required to, and it will not, countenance and reward the sharp practice disclosed in this record."

## DISCUSSION

We start by clarifying a point urged by plaintiffs in the trial court, namely that the consolidation order in effect brought about a merger of the

---

[3] "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

two actions into one, so that an appearance in either action constituted an appearance in both.

■ There are two types of consolidation: a complete consolidation resulting in a single action, and a consolidation of separate actions for trial. Under the former procedure, which may be utilized where the parties are identical and the causes could have been joined, the pleadings are regarded as merged, one set of findings is made, and one judgment is rendered. In a consolidation for trial, the pleadings, verdicts, findings and judgments are kept separate; the actions are simply tried together for the sake of convenience and judicial economy. (See generally 4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 298 et seq.)

■ These two cases were consolidated for the purpose of being tried together only. While it is clear that the two actions arose from the same incident, nonetheless there were two different sets of plaintiffs who pleaded their cases separately and would presumably expect separate judgments. There is no indication in the record that the two complaints in these actions became merged. On the contrary, the actions retained their separate numbers. Furthermore, a complete merger of the two actions would be improper in the absence of a stipulation or consent by defendants. (*Johnson* v. *Marr* (1935) 8 Cal.App.2d 312, 314 [47 P.2d 489].)

In their opposition to the writ petition real parties take the position that the two sets of plaintiffs could have been joined under Code of Civil Procedure section 378,[4] since their rights to relief arose from the same occurrence and presented common questions of law and fact; consequently, the consolidation "in effect" brought about a joinder of plaintiffs. There is no basis for this assertion. Plaintiffs were not in fact joined, and the actions remained separate and distinct even after the consolidation. The order accomplished only this: the two actions were thereafter deemed consolidated for trial and the proper caption for any subsequent filings in either action would include both case names and numbers. We move then to our discussion of the three-year statute.

■ Dismissal for failure to serve within three years is mandatory, subject only to exceptions as expressly provided by statute. (Code Civ. Proc., § 583.250.) The exceptions listed in section 583.220 are two: "a stipulation in writing" or "another act that constitutes a general appearance in the

---

[4] Code of Civil Procedure section 378, subdivision (a): "All persons may join in one action as plaintiffs if: [¶] (1) They assert any right to relief jointly, severally, or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action . . . ."

action." In addition, a plaintiff is excused if service was for some reason "impossible, impracticable, or futile due to causes beyond the plaintiff's control." (Code Civ. Proc., § 583.240.) And as a last exception, general principles of waiver and estoppel apply. (Code Civ. Proc., § 583.140.)

There was no written stipulation to waive service. Nor was service impossible, impracticable or futile. And as we have noted above, the order consolidating the cases for trial did not merge the two actions into one. Consequently, unless Sanchez made a general appearance in the *Martinez* action or was otherwise estopped to assert the bar of the three-year statute, the denial of his motion was in excess of the court's jurisdiction. (*Botsford* v. *Pascoe* (1979) 94 Cal.App.3d 62, 66 [156 Cal.Rptr. 177].)

*Sanchez Did Not Make a General Appearance in the Martinez Action.*

"Appearance" is defined in Code of Civil Procedure section 1014: "A defendant appears in an action when he answers, demurs, files a notice of motion to strike, files a notice of motion to transfer pursuant to Section 396b, gives the plaintiff written notice of his appearance, or when an attorney gives notice of appearance for him."

Courts have generally agreed that this definition is not exclusive. (*General Ins. Co.* v. *Superior Court* (1975) 15 Cal.3d 449, 453 [124 Cal.Rptr. 745, 541 P.2d 289].) Thus a general appearance need not be " 'a formal, technical step or act . . .' " (*O'Keefe* v. *Miller* (1965) 231 Cal.App.2d 920, 921 [42 Cal.Rptr. 343]); rather the term may apply to various acts which, under all of the circumstances, are deemed to confer jurisdiction of the person. (*Botsford* v. *Pascoe, supra,* 94 Cal.App.3d 62, 67.) What is determinative is whether defendant takes a part in the particular action which in some manner recognizes the authority of the court to proceed. (*RCA Corp.* v. *Superior Court* (1975) 47 Cal.App.3d 1007, 1009 [121 Cal.Rptr. 441]; 2 Witkin, Cal. Procedure (3d ed. 1985) Jurisdiction, § 141.)

Two cases will serve to illustrate these principles. In the case of *Creed* v. *Schultz* (1983) 148 Cal.App.3d 733 [196 Cal.Rptr. 252], the circumstances were sufficient to establish a general appearance. In that case two actions were tried together: one brought by wife for delinquent child support under URESA, and the other by husband to enforce the terms of an out of state judgment re child custody and visitation. Wife, who lived in Texas, was not regularly served; nevertheless she retained California counsel and instituted discovery in the suit brought by husband, by serving him with notice to take his deposition and for production of documents. When the two causes came on for trial together, wife moved to quash service in the second action and her attorney appeared specially to argue that motion. The court denied

wife's motion, finding that she had made a general appearance by using the court's processes to initiate discovery proceedings. In contrast, Sanchez in our case did not initiate any discovery in the *Martinez* action.

In the case of *Botsford* v. *Pascoe, supra,* 94 Cal.App.3d 62, no appearance was found. That case involved a suit against the accounting firm of Haskins & Sells, in which plaintiffs claimed that Haskins & Sells had given them erroneous tax advice. Haskins & Sells in turn filed a cross-complaint in indemnity against its attorneys, claiming the attorneys had been the source of the advice. Cross-defendants were served with the cross-complaint, filed an answer, and participated actively in discovery. But they were not substituted as Does or served in the main action until after the three years had run, whereupon they moved to dismiss the complaint and the court granted their motion.

On appeal the *Botsford* plaintiffs argued along similar lines as do plaintiffs in our case, taking the position that cross-defendants' participation in the cross-action amounted to a general appearance in the main action. They contended that to treat the complaint and cross-complaint as separate actions " 'would elevate form over substance and defeat justice.' " And they pointed out that the cross-complaint was "factually and theoretically closely related to the complaint and . . . therefore [defendants'] activities upon the cross-complaint necessarily prepare[d them] to defend upon the complaint as well." (94 Cal.App.3d at p. 68.)

The Court of Appeal found that for purposes of the dismissal statute, the complaint and the cross-complaint were two separate and independent actions; therefore, "a general appearance in one such action will not necessarily constitute a general appearance in the other." (94 Cal.App.3d at p. 67.) While defendants were compelled by process on the cross-complaint to appear and defend with respect to that action, such involvement did not constitute a general appearance in the related action in which they had not been served.

The court reached this conclusion notwithstanding the fact that the cross-defendants in *Botsford* had served upon plaintiffs a request to produce documents under Code of Civil Procedure section 2031. The court observed that since this procedure is available only between parties, cross-defendants arguably should have used a subpoena duces tecum rather than a request to produce, in order to maintain a clear distinction between the two actions. Plaintiffs argued that the request to produce constituted an implicit acknowledgement that cross-defendants were parties to the action on the complaint. But the court disagreed, finding that the notice, without more, was not a "clear indication" of a general appearance. (94 Cal.App.3d at p. 69.)

■ Similar considerations apply in our case. The *Urueta* and *Martinez* actions, while "factually and theoretically closely related," remained separate and independent actions even after the consolidation for trial. Sanchez's activities, in appearing at depositions noticed by plaintiffs and otherwise defending his interests in the *Urueta* matter, cannot reasonably be construed as a general appearance in *Martinez*. In fact, *Botsford* was a much stronger case for plaintiffs than this one as there the defendants had initiated discovery by serving a request to produce documents in the action in which they had not been served.

In summary we can find no support in established law for the trial judge's conclusion that Sanchez engaged in acts sufficient to constitute a general appearance under Code of Civil Procedure section 1014.

*Sanchez's Conduct Does Not Establish an Estoppel.*

■ Plaintiffs argued, and the trial court agreed, that defendants were estopped to claim the bar of the three year statute because their conduct during discovery led plaintiffs to believe that they were defending both lawsuits. The specific behavior complained of is this: At the beginning of the depositions plaintiffs' attorney announced that he was representing both sets of plaintiffs, and the various counsel for defendants said nothing.

In his order denying the motions for dismissal, Judge Nichols emphasized this point by quoting the introductory remarks of counsel for plaintiffs at the taking of Sanchez's deposition, where counsel said: "I represent the family of the children and the wife who were killed in this accident. . . ." We fail to grasp the significance the court apparently attached to these remarks. The "family of the children and the wife who were killed" could only refer to the Urueta family. The *Martinez* plaintiffs were not mentioned, at least at this particular deposition. Moreover, as we discuss below, counsel's announcement to Sanchez, even if it had identified Martinez as a client, does not give rise to a duty on the part of Sanchez's attorney to identify the extent of his interest in the matter.

Finding an estoppel on these facts is simply out of line with established case law. The case of *Lesko* v. *Superior Court* (1982) 127 Cal.App.3d 476 [179 Cal.Rptr. 595] is representative. In that case, plaintiffs filed a complaint for medical malpractice but did not serve defendant. Instead, for approximately three years the parties engaged in settlement negotiations. Defendant was aware that plaintiff was refraining from serving the complaint but said nothing. When negotiations broke down, plaintiffs effected service. By then it was several months after the statute had run and defendant moved to dismiss. The court granted the motion, rejecting plaintiffs'

argument that defendant's participation in settlement negotiations, coupled with his silence regarding service, reasonably led plaintiffs to believe that the time for service had been tolled.

Clearly the circumstances in *Lesko* come closer to establishing an estoppel than do ours, yet the court there did not find one. The point made in *Lesko*, which applies with equal force here, is that a defendant is under no duty to inform a plaintiff of his intention not to waive his right to dismissal under the three-year statute.

*Tresway Aero, Inc.* v. *Superior Court* (1971) 5 Cal.3d 431 [96 Cal.Rptr. 571, 487 P.2d 1211] is distinguishable. In that case defendant was served with a summons which he knew to be defective. He requested and received an extension of time to answer, well aware that the extension would take him beyond the three-year period. Instead of answering, he then moved to dismiss. The court found that this was a deliberate maneuver calculated to mislead plaintiff into believing service had been accomplished. Consequently defendant was estopped to assert the statutory bar.

Sanchez engaged in no such affirmative conduct. He attended depositions because he was compelled to do so in order to protect his interests in the *Urueta* matter. The notices of deposition served upon Sanchez bore both actions numbers and the designation "(Consolidated)," as was entirely proper. The two notices contained in the record recite simply that "plaintiff, DARIO URUETA, will take the deposition . . . ," with no reference whatsoever to plaintiff Martinez. Finally, there was no discovery unique to the *Martinez* action such that participation by Sanchez might indicate involvement in that action.

■  Estoppel arises where a party has "by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief . . . ." (Evid. Code, § 623.) Mere silence will not create an estoppel unless a party was under a duty to speak and circumstances required him to speak. (*Transport Clearings-Bay Area* v. *Simmonds* (1964) 226 Cal.App.2d 405 [38 Cal.Rptr. 116].)

■  Sanchez's attorney was under no duty in these circumstances to inform plaintiffs that he had not been served in *Martinez*. (*Lesko* v. *Superior Court, supra,* 127 Cal.App.3d 476.) On the contrary, had he alerted opposing counsel to counsel's own default, as the trial judge suggests he should have done, he would assuredly have breached his duty to his own client to preserve a legally cognizable defense. We do not agree that the conduct here amounts to sharp practice.

### Disposition

Real parties in interest Martinez have been notified that a peremptory writ in the first instance could be issued here, and have filed opposition. The peremptory writ of mandate will issue in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-182 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a writ of mandate issue directing respondent superior court to set aside its order denying petitioner Rudolfo Sanchez's motion to dismiss, and in its place and stead issue its order granting the motion and dismissing action No. 563153 as to Sanchez pursuant to Code of Civil Procedure section 583.210.

Agliano, P. J., and Capaccioli, J., concurred.

A petition for a rehearing was denied September 16, 1988, and the petition of real parties in interest for review by the Supreme Court was denied December 7, 1988.